**HALPER SADEH LLP**
Zachary Halper, Esq.
186 Darwin Lane
North Brunswick, NJ 08902
Tel: (212) 763-0060
Fax: (646) 776-2600
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MELINDA MILLER,<br><br>  Plaintiff,<br><br>v.<br><br>CANTEL MEDICAL CORP., CHARLES M. DIKER, GEORGE L. FOTIADES, ALAN R. BATKIN, ANN E. BERMAN, MARK N. DIKER, ANTHONY B. EVNIN, LAURA FORESE, RONNIE MYERS, PETER PRONOVOST, and KAREN N. PRANGE,<br><br>  Defendants. | Case No:<br><br><br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Melinda Miller ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## **NATURE OF THE ACTION**

1.  This is an action against Cantel Medical Corp. ("Cantel" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a)

1

and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Cantel by STERIS plc, Solar New US Holding Co, LLC, and Crystal Merger Sub 1, LLC (collectively, "STERIS").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company is headquartered in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Cantel common stock.

7. Defendant Cantel provides infection prevention and control products and services for the healthcare market. The Company is incorporated in Delaware and its principal executive offices are located in Little Falls, New Jersey. The Company's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol, "CMD."

8.  Defendant Charles M. Diker ("C. Diker") is Chairman of the Board of the Company.

9.  Defendant George L. Fotiades ("Fotiades") is Chief Executive Officer ("CEO") and a director of the Company.

10. Defendant Alan R. Batkin ("Batkin") is a director of the Company.

11. Defendant Ann E. Berman ("Berman") is a director of the Company.

12. Defendant Mark N. Diker ("M. Diker") is a director of the Company.

13. Defendant Anthony B. Evnin ("Evnin") is a director of the Company.

14. Defendant Laura Forese ("Forese") is a director of the Company.

15. Defendant Ronnie Myers ("Myers") is a director of the Company.

16. Defendant Peter Pronovost ("Pronovost") is a director of the Company.

17. Defendant Karen N. Prange ("Prange") is a director of the Company.

18. Defendants C. Diker, Fotiades, Batkin, Berman, M. Diker, Evnin, Forese, Myers, Pronovost, and Prange are collectively referred to herein as the "Individual Defendants."

19. Defendants Cantel and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

20. On January 12, 2021, Cantel and STERIS announced that they had signed a definitive agreement whereby STERIS would acquire Cantel in a cash and stock transaction. Under the terms of the agreement, Cantel common shareholders will receive approximately $16.93 in cash and 0.33787 of a STERIS ordinary share for each Cantel share they own. The press release announcing the Proposed Transaction states, in pertinent part:

**STERIS Announces Definitive Agreement to Acquire Cantel Medical**

January 12, 2021 07:12 ET | Source: STERIS plc

- *Complementary to STERIS's product and service portfolio, focused on infection prevention*
- *Extends STERIS's reach to Dental Customers*
- *$110 million in expected EBIT synergies by year four*
- *Accretive to adjusted earnings per diluted share in year one*
- *Conference call with STERIS and Cantel management today at 8:00 a.m. ET*

DUBLIN, IRELAND and LITTLE FALLS, N.J, Jan. 12, 2021 (GLOBE NEWSWIRE) -- STERIS plc (NYSE: STE) ("STERIS" or the "Company") and Cantel Medical Corp (NYSE:CMD) ("Cantel") today announced that STERIS has signed a definitive agreement to acquire Cantel, through a U.S. subsidiary. Cantel is a global provider of infection prevention products and services primarily to endoscopy and dental Customers. Under the terms of the agreement, STERIS will acquire Cantel in a cash and stock transaction valued at $84.66 per Cantel common share, based on STERIS's closing share price of $200.46 on January 11, 2021. This represents a total equity value of approximately $3.6 billion and a total enterprise value of approximately $4.6 billion, including Cantel's net debt and convertible notes. The agreement has been unanimously approved by the Boards of Directors of both companies.

"We have long appreciated Cantel, which is a natural complement and extension to STERIS's product and service offerings, global reach and Customers," said Walt Rosebrough, President and Chief Executive Officer of STERIS. "Our companies share a similar focus on infection prevention across a range of healthcare Customers. Combined, we will offer a broader set of Customers a more diversified selection of infection prevention and procedural products and services. We welcome the people of Cantel to the STERIS team and firmly believe we will create greater value for our Customers and shareholders together."

Charles M. Diker, Chairman of the Cantel Board of Directors, has separately entered into a voting support agreement along with certain other entities collectively holding approximately 10% of Cantel's outstanding shares. Mr. Diker said, "We are pleased to reach this agreement with STERIS, which is the culmination of a robust process to achieve an outcome that allows Cantel shareholders to participate in the significant upside of the combined company, while also providing them with immediate cash value. Together with STERIS, we believe the value opportunity is compelling, both today and in a post-COVID world, as the combined company will have the scale, breadth and depth to unlock substantial value that will drive further benefits for Cantel shareholders, Customers and all stakeholders."

"We believe Cantel and STERIS are a perfect strategic fit, and this combination is a natural next step for our company, enabling us to accelerate progress on our Cantel 2.0 initiatives and drive enhanced value for shareholders and the healthcare providers and systems we support," said George Fotiades, CEO of Cantel. "The last year has demonstrated more than ever the importance of innovative and comprehensive infection prevention and control solutions that protect healthcare providers and patients. Together with STERIS, we will be able to provide a more extensive and innovative suite of offerings to our Customers around the world. Importantly, STERIS recognizes that our proven and talented team is the foundation of Cantel's success and we look forward to working collaboratively to bring our two organizations together."

This transaction brings together STERIS's and Cantel's franchises to create a stronger global business serving a broader set of Customers. Cantel's largest business, its Medical portfolio, will strengthen and expand STERIS's Endoscopy offerings, adding a full suite of high-level disinfection consumables, capital equipment and services, as well as additional single-use accessories. Cantel's Dental business extends STERIS into a new Customer segment where there is an increasing focus on infection prevention protocols and processes. Annual revenue for Cantel in its recent fiscal year ended July 31, 2020, was approximately $1 billion, with adjusted EBIT of approximately $134 million.

**Financial Highlights and Transaction Details**

The companies expect to realize annualized pre-tax cost synergies of approximately $110 million by the fourth fiscal year following the close, with approximately 50% achieved in the first two years. Cost synergies are expected to be primarily driven by cost reductions in redundant public company and back-office overhead, commercial integration, product manufacturing, and service operations.

Under the terms of the agreement, Cantel common stockholders will receive approximately $16.93 in cash and 0.33787 of a STERIS ordinary share, or a total of value of approximately $84.66 per Cantel common share based on STERIS's closing share price of $200.46 on January 11, 2021. The transaction is anticipated to close by the end of STERIS's first quarter of fiscal 2022 (ending June 30, 2021), pending customary closing conditions including receipt of regulatory approvals and approval by Cantel stockholders.

STERIS expects to fund the cash portion of the transaction consideration and repay a significant amount of Cantel's existing debt with approximately $2.0 billion of new debt and has obtained fully committed bridge financing.

\*    \*    \*

**Advisors**
Guggenheim Securities is serving as financial advisor to STERIS and Jones Day is

serving as legal counsel. JPMorgan Chase Bank, N.A., served as sole lead arranger and bookrunner in respect of the bridge financing. Centerview Partners LLC is serving as exclusive financial advisor to Cantel and Wachtell, Lipton, Rosen & Katz is serving as legal counsel.

**About STERIS**
STERIS's MISSION IS TO HELP OUR CUSTOMERS CREATE A HEALTHIER AND SAFER WORLD by providing innovative healthcare and life science product and service solutions around the globe. For more information, visit www.steris.com.

**About Cantel:**
Cantel is a leading global company dedicated to delivering innovative infection prevention products and services for patients, caregivers, and other healthcare providers which improve outcomes, enhance safety and help save lives. Cantel's products include specialized medical device reprocessing systems for endoscopy and renal dialysis, advanced water purification equipment, sterilants, disinfectants and cleaners, sterility assurance monitoring products for hospitals and dental clinics, disposable infection control products primarily for dental and GI endoscopy markets, instruments and instrument reprocessing workflow systems serving the dental industry, dialysate concentrates, hollow fiber membrane filtration and separation products. Additionally, Cantel provides technical service for its products. For further information, visit the Cantel website at www.cantelmedical.com.

21. On April 1, 2021, Defendants caused to be filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

22. The Proxy Statement, which recommends that Cantel shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Cantel's and STERIS's financial projections; (ii) the financial analyses performed by Cantel's financial advisor, Centerview Partners LLC ("Centerview"), in connection with its fairness opinion; and (iii) the sales process leading up to the Proposed Transaction.

23. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background on the

Mergers; (ii) Recommendation of the Cantel Board of Directors and Reasons for the Mergers; (iii) Opinion of Cantel's Financial Advisor; and (iv) Certain Unaudited Prospective Financial Information Prepared by Cantel.

24. Unless and until the material misstatements and omissions (referenced below) are remedied before the April 29, 2021 shareholder vote on the Proposed Transaction, Cantel shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

1. **Material Omissions Concerning Cantel's and STERIS's Financial Projections**

25. The Proxy Statement omits material information concerning Cantel's and STERIS's financial projections.

26. With respect to the "Cantel Forecast" and "STERIS Forecast," the Proxy Statement fails to disclose the following: (1) all line items underlying (i) Revenue, (ii) Adjusted EBITDA, (iii) Operating Income; (iv) Unlevered Free Cash Flow, and (v) Unlevered Free Cash Flow for Analysis; (2) Cantel's and STERIS's respective net income projections;[1] and (3) a reconciliation of all non-GAAP to GAAP financial metrics.

27. When a company discloses non-GAAP financial metrics in a Proxy Statement, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or

---

[1] According to the Proxy Statement, "Unlevered Free Cash Flow" is defined, in part, "as net income (loss) before interest and taxes." *See* Proxy Statement at 70, 72. Therefore, Cantel's and STERIS's net income projections exist and must therefore be disclosed.

released with the most comparable financial metrics calculated and presented in accordance with GAAP. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[2]

28. The Proxy Statement provides that:

On December 9, 2020, the Cantel Board of Directors convened a telephonic conference, which also was attended by representatives of Centerview. Centerview provided an update to the Cantel Board of Directors regarding the sale process and the revised offer received by STERIS. The Cantel Board of Directors discussed STERIS's offer in light of the significant increase in the price per share of Cantel Common Stock that occurred following Cantel's first quarter earnings announcement. Representatives of Centerview reviewed with the directors Cantel's historical and projected financials and referred to these financials in its financial analysis of various strategic alternatives, including separate analysis of Cantel's Medical, Dental and Life Sciences businesses. Centerview also provided a pro forma financial profile of the combined company giving effect to the STERIS transaction.

29. The Proxy Statement, however, fails to disclose: (i) when Cantel management prepared the financial projections that were reviewed at the Board's December 9, 2020 meeting; (ii) whether the Company's financial projections were revised following the Board's December 9, 2020 meeting and, if so, the timing and nature of such revisions; and (iii) whether and to what extent the projections relied upon by Centerview in connection with its fairness opinion incorporated Cantel's first quarter earnings.

30. The disclosure of the aforementioned financial information is material because it

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Apr. 13, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

would provide the Company's shareholders with a basis to project the future financial performance of the Company and the combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company and combined company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

31. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Centerview's Analyses

32. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Centerview.

33. The Proxy Statement fails to disclose the following concerning Centerview's "*Discounted Cash Flow Analysis*" of Cantel: (1) the individual inputs and assumptions underlying the (i) discount rate range of 9.25% to 10.00%, and (ii) perpetuity growth rates ranging from 3.75% to 4.50%; (2) all line items underlying the after-tax unlevered free cash flows of Cantel for the fiscal half-year ending July 31, 2021 and for the fiscal years 2022 through 2025; (3) the range of illustrative terminal values for Cantel; and (4) the number of fully-diluted outstanding shares of Cantel common stock as of January 8, 2021.

34. With respect to Centerview's "*Analyst Price Target Analysis*" of Cantel, the Proxy Statement fails to disclose: (1) the individual price targets observed by Centerview in its analysis; and (2) the sources thereof.

35. With respect to Centerview's "*Premiums Paid Analysis*," the Proxy Statement fails

to disclose each transaction and the premiums paid therein.

36. The Proxy Statement fails to disclose the following concerning Centerview's "*Discounted Cash Flow Analysis*" of STERIS: (1) the individual inputs and assumptions underlying the (i) discount rate range of 7.50% to 8.25%, and (ii) perpetuity growth rates ranging from 3.75% to 4.50%; (2) all line items underlying the after-tax unlevered free cash flows of STERIS for the fiscal quarter ending March 31, 2021 and fiscal years 2022 through 2026; (3) the range of illustrative terminal values for STERIS; and (4) the number of fully-diluted outstanding STERIS shares as of January 8, 2021.

37. With respect to Centerview's "*Analyst Price Target Analysis*" of STERIS, the Proxy Statement fails to disclose: (1) the individual price targets observed by Centerview in its analysis; and (2) the sources thereof.

38. The Proxy Statement provides that, at the December 9, 2020 Board meeting, "Centerview [] provided a pro forma financial profile of the combined company giving effect to the STERIS transaction." *See* Proxy Statement at 53. While certain pro forma financials have been disclosed in the Proxy Statement, it appears Centerview's financial analysis of the pro forma financial profile of the combined company has been omitted.

39. The valuation methods, underlying assumptions, and key inputs used by Centerview in rendering its purported fairness opinion must be fairly disclosed to Cantel shareholders. The description of Centerview's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Cantel shareholders are unable to fully understand Centerview's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction.

40. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

41. The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

42. The Proxy Statement provides that, "[b]etween October 19, 2020 and November 14, 2020, Cantel entered into confidentiality agreements with a total of five prospective buyers, including three of the Strategic Bidders (including a confidentiality agreement entered with STERIS on October 26, 2020) and both Financial Bidders."

43. The Proxy Statement, however, fails to disclose the terms of Cantel's confidentiality agreements, including whether such agreements contained standstill provisions with "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude interested parties from making superior offers for the Company.

44. Without this information, Cantel shareholders may have the mistaken belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable Cantel shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

45. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

46. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

48. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

49. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

50. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

51. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

52.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

54.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

55.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements

or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

56. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

57. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

  C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

  D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

  E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 13, 2021       Respectfully submitted,

              **HALPER SADEH LLP**

              /s/ Zachary Halper
              Zachary Halper, Esq.
              186 Darwin Lane
              North Brunswick, NJ 08902
              Telephone: (212) 763-0060
              Facsimile: (646) 776-2600
              Email: zhalper@halpersadeh.com

              Daniel Sadeh, Esq. (*pro hac vice* application forthcoming)
              667 Madison Avenue, 5th Floor
              New York, NY 10065
              Telephone: (212) 763-0060
              Facsimile: (646) 776-2600

              *Counsel for Plaintiff*